### GRIFFAY et ux. v. ROBBINS.
### No. 8193.

Court of Civil Appeals of Texas. Austin.
Feb. 19, 1936.

Rehearing Denied March 18, 1936.

G. A. Walters, of San Saba, for appellants.

F. R. Gray and A. B. Wilson, both of San Saba, for appellee.

McCLENDON, Chief Justice.

Robbins, in his capacity as guardian of the estate of Ella Robbins, non compos mentis, sued Griffay and wife upon a note and to foreclose a trust deed lien securing it, executed by Griffay alone in favor of Robbins as such guardian. In a trial to a jury upon special issues, a personal judgment was rendered against both Griffay

and wife with foreclosure as to both, of the trust deed lien. Griffay and wife have appealed.

■ Appellants' brief presents six assignments of error. The first complains of the trial court's action in overruling "general and special exceptions." A proposition under this assignment urges a number of asserted defects in the petition, one of which presents fundamental error, namely, that no basis for a personal judgment against Mrs. Griffay was alleged. This point was nowhere urged in the trial court, and for that reason correction of the judgment in this regard will be at the cost of appellants.

None of the other points urged in the proposition are well taken. Substantially, they are:

■ 1. The petition does not allege that the guardianship was pending "at the time the note was executed." The petition alleges that Griffay "made, executed and delivered to said plaintiff, Mose Robbins, for the use and benefit of his said ward, Ella Robbins, his one certain promissory note," etc.; and "that plaintiff herein is the lawfully appointed, qualified and acting guardian of the estate of said ward, Ella Robbins, by virtue of an order of the Probate Court of San Saba County, Texas, and as such is the holder and owner of said note herein sued on and is legally authorized to collect same." These allegations were sufficient.

■ 2. The petition does not allege a sufficient consideration for the note. The allegation in this regard reads: "That said note was given to said Mose Robbins, guardian as aforesaid, for a good and valuable consideration, to-wit: to satisfy an indebtedness for interest due and owing by said N. J. Griffay to said Robbins estate on a land note." The point is made that there was no allegation that the land note was credited with the amount of this note. Whether the credit was actually indorsed on the land note was immaterial. Other than as to Mrs. Griffay's personal liability, the assignment is not well taken, independently of its being multifarious.

■ The second assignment complains of the trial court's refusal to sustain an objection to introduction of the note on the ground of variance from the allegations of the petition. The variance urged is by reason of certain credits indorsed on the back of the note and a further indorsement reading, "and this note extended to January 1st, 1932"; the petition alleging that the note was due one year after its date (April 8, 1930), and that no part of the note had been paid. These indorsements did not constitute a variance. The credits were admitted and allowed, and the suit was not brought until August 4, 1932.

The fifth assignment complains of overruling appellants' motion for judgment non obstante veredicto, "for the reasons set forth in said motion." And the sixth assignment reads: "The verdict of the jury is contrary to the evidence and is without any evidence to support the second issue submitted in the Court's charge, and is against the great weight and preponderance of the evidence on the first issue submitted. (There being only two special issues submitted in the court's charge)."

The special issues (each of which the jury answered "No") read:

"Issue No. 1. Was the note for $300.00 and the deed of trust securing same, in controversy in this suit, cancelled by the deed from plaintiffs, N. J. Griffay and wife, to Mose Robbins, Guardian, for the Mills County property?"

"Issue No. 2. If you have answered the above issue 'Yes', then you need not answer this issue, but if you have answered it 'No' then state whether or not the property in question in this suit, namely the southwest portion of Block 1, Rogan Addition to the town of San Saba, Texas, was the homestead of plaintiffs, N. J. Griffay and wife, on April 9th, 1930, at the time of the execution of the deed of trust to Mose Robbins, Guardian?"

The grounds asserted in the motion for judgment were substantially:

1. Because the answer to the first issue was not supported by the evidence, in that the "preponderance of the evidence" was to the effect that the note in suit was settled through conveyance by defendants to plaintiff of the Mills county land.

2. Because the answer to the second issue "is not supported by and is contrary to all the evidence introduced in said cause."

■ Some other grounds are set up which relate to the manner and form in which the issues were submitted. These could not be urged for the first time after verdict. No objection to the issues was made at or before the time they were submitted to the jury.

■ We will first consider the evidence relative to the issue whether the note in suit

was discharged as part of the consideration for the Mills county property conveyance to plaintiff.

This property was owned by Griffay subject to a vendor's lien note for $2,000 held by plaintiff. On February 1, 1929, this note and interest, aggregating $2,300, was renewed and extended to January 1, 1932. The first year's interest (8 per cent. or $184) fell due on February 1, 1930, and Griffay was unable to pay it. The note and trust deed in suit were executed April 8, 1930, under an agreement that plaintiff would carry the $2,300 note another year. This latter note bore the following indorsements:

"April 13, 1930. Credited by $300 in a new note for that amount secured by deed of trust on San Saba Town house and lot in San Saba, Texas.

"This was for year 1929 interest on this note a balance of unpaid interest for four years on the Mills County indebtedness on same land in Mills County."

April 28, 1931, Griffay and wife conveyed the Mills county land to plaintiff, the deed containing the following recitation as to consideration: "The cancellation and return to us, of one certain promissory note, of date January 1st, 1929, and due on or before January 1st, 1932, payable to the order of Mose Robbins Guardian of the estate of Ella Robbins, at San Saba, Texas, with interest thereon at the rate of 8 per cent per annum from date for the sum of Twenty Three Hundred dollars principal upon which there is now due and unpaid, principal, interest and attorneys fees, the sum of $2800.00, which said note represents an indebtedness we are due said estate of Ella Robbins, loaned to us by her guardian, Mose Robbins, and used by us in the payment of part of the purchase money for said hereinafter described land and premises."

There was a great deal of testimony upon this issue both pro and con, but its substance can be briefly stated. Mr. and Mrs. Griffay testified that the $300 note was a part of the $2,800 consideration for the deed; that Wilson, attorney for plaintiff, did not have either of the notes in his possession at the time of the conveyance, but promised to surrender them to Griffay later, which he never did. There were three credits on the $300 note, all after date of the deed: "Interest paid May 7, 1931 by Mrs. Griffay—$10.00; August 24, 1931 by Mrs. Griffay—$13.00; August 28, 1931 by Mrs. Griffay—$1.00." Mrs. Griffay admitted making these payments, but denied that the $10 was paid prior to executing the deed. The other two payments she testified were to reimburse Wilson for fire insurance premiums he had paid for her on the property. Wilson testified, on the other hand, that these payments were made on the several dates shown by the credits, and that they represented one year's interest on the $300 note, which Mrs. Griffay paid in installments, as she did not have the money to pay it all at once. If we exclude taxes (referred to below), the $2,800 recital will not corroborate either plaintiff's or defendants' theory as regards the amount due when the conveyance was made. If we take plaintiff's theory and credit the $2,300 note with $300 as of April 8, 1930, the total amount of principal, interest, and attorney's fees was only about $2,630, or $170 short of $2,800. If we take defendants' theory that the $300 note was included, the total was about $2,961, or $161 over the $2,800. Plaintiff and Wilson both testified, however (and this was not denied by defendants), that he was required to pay a large amount in back taxes on the property to protect his lien, which made the total run up to a little over $2,800. If taxes were added to the amount included in the settlement under defendants' theory, it would increase the excess over the $2,800 to approximately $330. It is to be noted also that the above-quoted recitation in the deed provides for "cancellation and return" of the $2,300 note, but makes no mention of the $300 note. All the witnesses testifying on this point were interested, and with these sharp conflicts in their testimony and these several detailed circumstances, we cannot say that the evidence even preponderated in favor of defendants' theory.

We have considered this issue upon the assumption that the sufficiency of the evidence, factually, is properly raised. In view of the above holding, we pretermit discussion of this question.

Sufficiency of the evidence upon the homestead issue is only presented as a matter of law. The evidence upon this issue may be summarized as follows:

For a number of years prior to 1927, defendants lived upon 251-acre farm which they owned, known as the Brown place, and situated about 15 miles from San Saba. There is no question but that this constituted their homestead at that time. Early in 1927 they bought the property in suit, which consisted of a dwelling in San Saba. Both

defendants testified that the property was originally bought in order to send one of their children to school in San Saba. In September of that year they moved into the town house, taking all or most of their furniture, but leaving one of their sons on the Brown place, who "batched" there and cultivated the place with the assistance of his father and other members of the family. The latter would come out from town and work on the place, which furnished in part a living for the family. On the Brown place there was an orchard and garden, which contributed to the family's living. They also obtained some of their firewood from the place to use in their town residence. Also, they kept their milk cows on the Brown place. During the canning season for fruits and vegetables, members of the family went out to the Brown place and did the family canning. Often, also, they spent week-ends there. This was the situation continuously after they moved to town (with the exception of two years that Griffay rented out the place), until they lost it by foreclosure January 29, 1932. In a deed of trust executed by Griffay on February 18, 1930, on their Mills county property, the following recital appears: "I hereby certify that no part of this land is my homestead, I now having my homestead on a tract of land situated in San Saba County, Texas, where I now reside."

Wilson, who drew this instrument, testified that Griffay represented to him at the time that the Brown place (which was the "tract of land situated in San Saba County") was his homestead. Griffay denied this, and testified he did not know this recital was in the instrument, if in fact it was there when he signed it. Wilson also testified that he represented the holder of a second lien note on the Brown place, which was foreclosed upon, and writ of possession issued January 29, 1932. On that date he was in the sheriff's office when a conversation took place between Griffay and the sheriff regarding execution of the writ. Wilson testified that Griffay refused at first to get off the place on the ground that it was his homestead; but when told by the sheriff he had the writ and would have to put him off, he agreed to get off. Griffay's version of the conversation was that his refusal was because he wanted to get his crops off and also to save some stock he held in the Federal Farm Bank. He denied having claimed the property was homestead. Wilson also testified (somewhat vaguely, however) that Griffay represented that the Brown place was his homestead at the time the $300 note was executed. Griffay denied this. At various times during their residence in town they rented out some of the rooms in the town residence.

■ This evidence was sufficient, we think, to support a finding that the Brown place had not been abandoned as a homestead at the time the trust deed was executed. The circumstances surrounding the removal to town are perfectly consistent with a temporary residence there for educational purposes. What their real intention was could only be gathered from their words and actions. Their testimony regarding such intentions was not conclusive, because they were vitally interested in the issue. Whether Griffay made the several declarations testified to was a question of fact for the jury. And since the circumstances in evidence did not conclusively show an abandonment of the homestead estate in the Brown place, the jury finding that the property in suit was not their homestead when the trust deed was executed finds sufficient support in the evidence.

■ The third assignment complains of the admission in evidence of the above-quoted recitation in the trust deed of February 18, 1930. This recitation was clearly admissible as a declaration against interest made by Griffay less than two months before the $300 note was executed, and as contradictory of his testimony that the Brown place was not his homestead at that time.

The fourth assignment complains of the introduction in evidence of the sheriff's return on the writ of possession issued January 29, 1932, which reads: "Came to hand the 29th day of January, 1932, at 10 o'clock a. m., and not executed for the reason that the defendants, N. J. Griffay and wife, agreed to get off the premises involved and vacate same without us executing this writ, which he did."

■ There was no dispute regarding any statement made in this return. Griffay admitted the fact of a conversation in the sheriff's office, and that he finally agreed to give possession. The return throws no light upon the controversy regarding the expressed reasons for Griffay's original refusal to give possession. We cannot see that appellants have been in any way prejudiced by its admission.

In so far as it decrees a personal judgment against Mrs. Griffay, the trial court's judgment is reversed, and judgment is here

rendered in her favor. In all other respects the trial court's judgment is affirmed. All costs are assessed against appellants.

Reversed and rendered in part, and in part affirmed.